IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA

v.  4:05–cr–00179(1)-GTE
4:08-cv-00658-GTE

WALLY K. EL-BECK

## ORDER

Before the Court is Petitioner Wally K. El-Beck's post-conviction motion for relief pursuant to Rule 33 of the Federal Rules of Criminal Procedure or, alternatively, under 28 U.S.C. § 2255, filed *pro se*. Responses and replies have been filed.[1] For the reasons explained below, the Court rejects all arguments for relief put forth by Petitioner.

## I.   BACKGROUND

Petitioner Wally El-Beck ("El-Beck"), through his company Arkansas Municipal Waste-To-Energy ("AMWE"), leased a municipal incinerator from the City of Osceola that he used to dispose of industrial and medical waste from third parties. Customers delivered truckloads of waste to Petitioner with manifests describing the type and the amount of waste to be off-loaded and destroyed. Petitioner would then mail or fax an invoice to the customers for the incineration cost, and the customers would then mail a check or checks to Petitioner for the waste destruction service. For some customers, after payment was received, Petitioner would mail a Certificate of Destruction certifying the waste had been destroyed.

On October 20, 2006, a jury convicted Petitioner of 37 counts of mail fraud and one count of wire fraud. The jury's verdict reflected its finding that El-Beck devised a scheme to defraud three of his customers, who agreed to pay, and did pay, for the destruction of industrial waste by

---

[1] Doc. Nos. 127, 128, 130, 131, 132.

1

El-Beck's company and that El-Beck used the mail (or fax machine) in furtherance of an essential step in the scheme. The Government proved that El-Beck committed mail (or wire) fraud by falsely representing to his customers that their waste had been properly incinerated and destroyed in compliance with applicable law, when it had not been. The three victims of El-Beck's fraud were PCI, PSC, and Hazchem.

The verdict was not appealed. On March 21, 2008, Petitioner was sentenced to 18 months in prison and ordered to pay restitution in the amount of $904,661.10. He began serving his sentence on June 9, 2008.[2]

Petitioner has filed a motion for new trial pursuant to Fed. R. Crim. P. 33 or, in the alternative, motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

## II. DISCUSSION

### A. New Trial Motion

Petitioner contends that he is entitled to a new trial based on newly discovered evidence -- specifically, an August 19, 2004, Consent Order between the EPA and PCI (Pollution Control Industries, Inc., one of the victims of the fraud). According to Petitioner, the Consent Order "contradicted substantial portions of the testimony of the Government's witnesses" and "proves that Defendant was, in fact, not guilty of perpetrating fraud" on PCI and Phillips Service Corp.[3] Petitioner contends that "the Consent Order, although containing no admission of criminal conduct on the part of PCI, clearly demonstrates that PCI knowingly transported waste to Arkansas Municipal Waste-to-Energy (AMWE) which AMWE was not authorized to incinerate

---

[2] El-Beck's reporting date was delayed twice at his request.

[3] Doc. No. 114.

or otherwise dispose of . . . ."[4] Petitioner also asserts that the Consent Order establishes that PCI suffered losses based on their own unlawful acts, rather than the actions of Petitioner.

To warrant a new trial based on newly discovered evidence, a petitioner must establish, among other things, that "the evidence is such as to be likely to lead to acquittal."[5] Petitioner has not met his burden. Petitioner greatly overstates the significance of the Consent Order. It has nothing to do with his guilt for the offenses of conviction. First, the Consent Order does not establish that PCI shipped waste to AMWE for incineration that was, under applicable environmental standards, not eligible for incineration by AMWE. At best, it creates a factual dispute relevant to the determination of the restitution amount.[6] Second, even assuming for purposes of this motion that the Consent Order could be used to help establish that some of the waste PCI shipped to AMWE was classified in such a way that the waste was not in fact within the class of materials that AMWE was authorized to incinerate, such does not impact the mail and wire fraud convictions. The Court rejects El-Beck's contention that the Consent Order "shows that PCI knew, or should have known, that drums of waste were not being incinerated or destroyed regardless of any statements to the contrary contained in Certificates of Destruction."[7]

After reviewing the newly discovered evidence, the Court finds that, at best, the materials are something that could have been used at trial on cross-examination for impeachment purposes. None of the newly discovered evidence contradicts the overwhelming evidence that established that El-Beck, with intent to defraud, accepted waste for destruction, certified to the victims that

---

[4] *Id.*

[5] *U.S. v. Yerkes*, 345 F.3d 558, 562 (8th Cir. 2003).

[6] These facts were considered by the Court during the sentencing process and El-Beck was given ample time to develop this argument. The sentencing was delayed, in part, for him to do so.. *See, e.g.,* discussion in Order dated August 1, 2007, at 4-5. Accordingly, the alleged newly discovered evidence relates solely to El-Beck's guilt and not sentencing.

[7] El-Beck's motion, Doc. No. 114 at 3.

he destroyed it, accepted payment for destroying it, but, in fact, failed to destroy it. Because Petitioner's newly discovered evidence would not be likely to lead to an acquittal, his motion for a new trial under Rule 33 is DENIED.

### B.   § 2255 Post-conviction relief

#### 1.   Prosecutorial Misconduct

Petitioner asserts that the Government "deliberately and intentionally" withheld exculpatory evidence -- namely, the August 19, 2004 Consent Order, completed Waste Profile Sheets, and "records that had been washed away by Hurricane Katrina." Once again, this evidence appears to concern the issue of whether PCI sent non-conforming waste to AMWE for destruction. Petitioner also contends that the Prosecution elicited false testimony from witnesses.

"Prosecutorial misconduct provides grounds for a new trial when the prosecutor's conduct was improper and prejudicial enough to deprive the defendant of a fair trial."[8] Under the Brady rule, the prosecution is required at or before any criminal trial to divulge all evidence favorable to the accused that is material either to guilt or to punishment.[9] Evidence is considered "material" where a "reasonable probability" exists that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different."[10] "A 'reasonable probability' is a probability sufficient to undermine the reviewing court's confidence in the outcome of the proceeding."[11]

The Government denies that it withheld any evidence. The Court does not need to resolve this issue because El-Beck has failed to establish materiality for purposes of triggering

---

[8]*United States v. Thropay*, 394 F.3d 1004, 1007 (8th Cir. 2005).

[9]*Brady v. Maryland*, 373 U.S. 83, 87 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963).

[10]*United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

[11]*Drew v. United States*, 46 F.3d 823, 828 (8th Cir. 1995)(citation omitted).

Brady disclosure obligations. The Court is confident that the outcome of El-Beck's trial would have been the same, whether or not the allegedly withheld evidence had been available to the defense at trial. The Court also rejects Petitioner's conclusory allegation that the Government elicited unspecified false testimony from unidentified witnesses.

### 2. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel because his counsel (1) failed to timely complete discovery requests (again referencing the Consent Order and Waste Profile Sheets); (2) failed to request the existence and content of any plea bargains or arrangements between Government and its witnesses; (3) did not attack the indictment; (4) did not make an opening statement; (5) did not file a motion to dismiss; (6) did not call any witnesses other than Petitioner; (7) did not file anything after discovering new evidence; (8) did not file a motion for a new trial; and (9) failed to file an appeal.

To establish an ineffective assistance claim Petitioner has a heavy burden since courts "indulge a strong presumption that counsel's conduct falls within the wide range of professionally reasonably assistance and sound trial strategy."[12] To prevail, Petitioner must not only establish that his attorneys' performance was constitutionally deficient, but he must also demonstrate that he was prejudiced as a result of that deficient performance.[13] Courts are not required to analyze the performance prong if they determine that the petitioner suffered no prejudice as a result of the allegedly deficient performance.[14] Furthermore, "reasonable trial

---

[12] *Driscoll v. Delo*, 71 F.3d 702, 706 (8th Cir. 1995).

[13] *United States v. Robinson*, 301 F.3d 923, 925 (8th Cir. 2002).

[14] *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997).

strategy does not constitute ineffective assistance of counsel simply because it is not successful."[15]

When considering the prejudice prong the Court must decide whether the Petitioner has established "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[16] The Supreme Court has cautioned that "to set aside a conviction or sentence solely because the outcome could have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."[17] The Petitioner must show some effect of the challenged conduct on the reliability of the trial process. Otherwise, the Sixth Amendment guaranty is generally not implicated.[18] A Petitioner's failure to show prejudice is dispositive. In other words, absent a showing of prejudice a court need not address the reasonableness of counsel's performance.[19]

### a. Discovery Requests

Petitioner asserts that his counsel "failed to file timely and complete discovery requests" which would have produced the Consent Order and Waste Profile Sheets, and would have shown that PCI "directed Movant to execute Certificates of Disposal even though PCI knew that all the waste had not been destroyed."[20] For the reasons previously discussed, this argument fails.

First, there is no basis for concluding that any records exist that would have shown that PCI knew that AMWE had not destroyed the waste as El-Beck represented it had. Second, for the reasons previously discussed, the Consent Order and Waste Profile Sheets, contrary to El-

---

[15] *Graham v. Domire*, 212 F.3d 437, 440 (8th Cir. 2000).

[16] *Strickland*, 466 U.S. at 694.

[17] *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).

[18] *United States v. Cronic*, 466 U.S. 648, 658 (1984).

[19] *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

[20] Doc. No. 114.

Beck's assertion, do not demonstrate El-Beck's innocence. He therefore suffered no prejudice as a result of not having them at trial.

### b. Plea Bargains

According to Petitioner, his counsel was ineffective by failing to "discover the nature, existence, and contend of any plea bargains or other agreements or arrangements between the Government and its witnesses."[21] Again, this claim is without merit. The Government points out that Petitioner's counsel did ask for this discovery, but there were no agreements to hand over.

### c. Attack Indictment

Petitioner asserts that his counsel "failed to file any Motions attacking the indictment herein."[22] He provides no supporting argument or evidence regarding why the indictment was deficient or what motion should have been filed. The Court has reviewed the indictment and sees no basis for a successful challenge to it. Petitioner's conclusory argument lacks merit and must be denied.

### d. Opening Statement

Petitioner contends his counsel's failure to make an opening statement amounted to ineffective assistance of counsel. Counsel's decision to not make an opening statement was a tactical decision, which does not amount to ineffective assistance of counsel.

### e. Motion to Dismiss

Petitioner insists that his counsel "failed to file a Motion to Dismiss at the close of the Government's evidence despite the Government's failure to show a fraud . . . ."[23] This argument

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

fails. Had such a motion been made, it would have been denied. The Government presented more than ample evidence of El-Beck's criminal conduct. No basis existed for challenging the sufficiency of the evidence, either before the case went to the jury or after El-Beck was convicted.

### f.      Witnesses Other than Petitioner

Petitioner contends that his counsel was ineffective by failing to call "any witnesses for the defense other than Movant himself . . . ." First, Petitioner's statement is not supported by the evidence -- Ms. Melinda Gonzalez took the stand as a witness for Defendant. Second, Defendant has not identified any witnesses that should have been called or provided any information as to what their testimony would have been. Defense counsel points out that Petitioner "did not identify any witnesses with relevant testimony other than Melinda Gonzales who testified in his defense at trial."[24] Regardless, a lawyer's determination on who to call at trial is a strategic decision that is "normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight."[25] Petitioner's conclusory and unsupported argument does not overcome the "strong presumption that his counsel's actions constituted a reasonable trial strategy."[26]

### g.      Did Not File Motions After Discovering New Evidence

Petitioner claims his counsel was ineffective because, after discovering the Consent Order and Waste Profile Sheets, his lawyers "failed to file any Motion presenting this issue to the Court . . . ." While it is true that Petitioner's lawyers did not file any motions related to these documents, this does not amount to ineffective assistance. As supported by Petitioner's lawyers'

---

[24]Doc. Nos. 127-6, 127-7.

[25]*Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir.1990) (en banc) (quotation omitted).

[26]*Snell v. Lockhart*, 14 F.3d 1289, 1301 (8th Cir.1994) (quotation omitted).

March 9, 2008, letter,[27] Petitioner's counsel thoroughly considered the newly discovered evidence and determined that the evidence did not warrant a Motion for New Trial. Had such a motion been filed, it would have been denied, for the reasons earlier stated in this Order.

### h. Motion for a New Trial

Petitioner asserts that his counsel was inefficient because they did not file a motion for new trial. As discussed above, there were no grounds for a new trial. Plaintiff cannot establish prejudice because he has come forward with no factual or legal basis that would entitle him to a new trial.

### i. No Appeal.

Petitioner's claim that counsel was inefficient because they failed to file an appeal is without merit. In a March 31, 2008, letter, Petitioner informed his counsel: "By this letter, I waive my right to file such an appeal. [The lawyers] may rely on this letter as my final expression of my decision on this matter."[28]

### 3. Other Grounds

In Grounds 6-7, Petitioner contends that he did not get a fair trial because he's Muslim, Arab and Syrian. This contention appears to be based solely on the theory that, after the events of September 11, 2001, it was not possible for any person of Arabian descent or appearance to get a fair trial in Little Rock, Arkansas, or the United States. While no for-cause challenge was made to the jury panel presenting this argument, during voir dire, the panel was questioned as to whether they would hold El-Beck's nationality against him. This argument is purely speculative and conclusory. The Court rejects it.

---

[27]Doc. No. 127-2.

[28]Doc. No. 127-8.

In Grounds 8-9, Petitioner asserts that the mail and wire fraud statutes under which he was convicted are vague. He offers no explanation or legal authority for this argument, only conclusion and speculation. The Court rejects both claims.

In summary, each of Petitioner's ineffective assistance claims are without merit. Additionally, the Court is compelled to observe that Petitioner received the benefit of excellent legal representation which far exceeded the minimum guarantee of legal counsel required by the Sixth Amendment. At all times, Petitioner had the benefit of not just one, but two, very capable defense lawyers. That they were not able to overcome the mountain of evidence that established El-Beck's guilt is not a reflection on their lawyering ability, but rather, simply demonstrates that lawyers must work with existing facts. While Petitioner is understandably disappointed in the outcome of the trial, this Court has no doubt that he received a fair trial and all the process that he was due.

## CONCLUSION

For the reasons explained above,

IT IS HEREBY ORDERED THAT Petitioner's Motion to Supplement his § 2255 motion (Doc. No. 130) be, and it is hereby, GRANTED. The Court has considered the documents provided, to the extent they are relevant, in considering Petitioner's claim for relief.

IT IS FURTHER ORDERED THAT Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. 114) be, and it is hereby, DENIED as to all claims.

IT IF FURTHER ORDERED THAT Petitioner's Motion for Hearing (Doc. No. 134) be, and it is hereby, DENIED. A hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[29]

---

[29] 28 U.S.C. § 2255.

IT IS SO ORDERED this  10th  day of July, 2009.

_/s/ Barrett Thomas Eisele_
UNITED STATES DISTRICT JUDGE